The case for today is 2018-1488, CAVE Consulting v. Truven Health. Mr. Brophy, please proceed. Good morning, my name is Richard Brophy. I may have pleased the court. I'll be speaking on behalf of CAVE Consulting Group this morning. I'll admit I tussled with which issue to start with today. Obviously there are some significant and unfortunate 285 issues to address, as well as some underlying 101 issues. As the panel may be aware, recently we filed a motion to vacate the appeal on at least the 101 issue and remand that back to the district court for dismissal. I'll provide a little bit of context for this. There was another case that was pending previous to this one that involved assertion of a parent patent in his family. We tried that case to a jury trial, went up on appeal, and unfortunately received an adverse claim construction ruling from this court that undid that jury verdict. We petitioned for rehearing and went up and filed a petition for cert. Those were denied very recently. As a result of the denial of that petition for cert, that claim construction issue is no longer appealable and final for us. The same exact claim language that appears in that earlier patent also appears in the patent that's asserted in the Truven case. Not in the HCSC case, but in the Truven case. And so we filed the present motion that's pending with the court to vacate the 101 decision, number one, because there's no longer an infringement issue as a result of the petition for cert being denied. As I understand it, the Federal Circuit opinion that issued the adverse claim construction for you came out a year ago, a couple months before you filed your blue brief in this case. But I don't recall seeing either in your blue brief or your subsequent gray brief any discussion about that case and any potential mooting effect that it might have on this case. And so, at least from you, the first time we heard about this parallel litigation was a week ago. And so it makes me question whether or not there really was ever a mooting event there, given this rather late in the game, last-second Hail Mary motion you filed last week. I understand. Certainly, from our perspective, we were holding out hope that the decision, the original decision from the Federal Circuit panel on that claim construction issue would be either reheard en banc or taken up by the Supreme Court. And so perhaps it was, and I'll say I don't recall the specific timing of when we filed the briefs in this case and when the Federal Circuit's panel decision was. You may be absolutely correct about that. Yeah, the panel decision was March 2018. Your blue brief was July 30, 2018. So I think all I can say is we were holding out hope that there would be some undoing of that decision. I don't mean to whine about that decision, but it was peculiar in the way it was resolved, at least from our perspective. And so we were pressing legitimately to have that reviewed by the en banc panel or by the Supreme Court. So from our perspective, the first moment that the appeal in this case was actually mooted is when our final attempts to appeal to the Supreme Court were exhausted with the denial of our petition. That was January 5, 2019. I believe that's correct, Your Honor. And then your motion to vacate came in several weeks later. Five weeks later. Last week. That's correct, Your Honor. In that intervening period, we did a series of legal research. I guess what I'm wondering is were you quietly, to yourselves, thinking about the potential that there was a mootness but you didn't want to raise it, and then once all appeals were exhausted in the parallel litigation, then at that time you knew and understood and recognized there was a mooting event? Or is this something you just came up with in preparation for oral argument here? Certainly not. We were aware that other members of the Patton family could be affected by this issue. And perhaps we should have raised that in our briefing and didn't. And if that's something we should have done, I apologize sincerely for that. My understanding was always that all of the parties, Truven HCSC and OptumInsight, the named defendant in that case, were well aware that an adverse claim construction would apply equally to all the patents that include that claim language. And so all I can say is that when the Supreme Court made its final determination not to take up our petition, we determined that was a finally adjudicated issue against us and moved to render this appeal moot. There's no, to put any concerns about this address, there's no gamesmanship there. I don't think there would be any benefit to it because the HCSC case, which is also grappling with a 101 issue here, is unaffected by that decision. It doesn't include the same claim language. When did the Supreme Court issue its denial of your request for certiorari? In January. January 5. So we were going to be grappling with the 101 issue regardless of whether it was in the Truven case or the HCSC case or both. So it's not a matter of gamesmanship. We just saw that during the routine course of following all these appeals up, as soon as the Supreme Court decided it was not going to take up the issue, we realized that we were out of options and that we had to... What if we were to disagree that the cert denial was a mooting event for the controversy between you and Truven? Then in that case we would take up the substance of the 101 issue. Can you? You filed a covenant not to sue last week. So is there any controversy left between you and the other party? From our perspective, there was no controversy at the exact moment that the Supreme Court denied it. No, but I'm taking that away from you. Okay, I understand. If your hypothetical is that in the absence of that decision or if that decision doesn't have any controlling merit, then yes, we did give Truven a covenant not to sue.  Truven does not have a D.J. claim against us for invalidity or non-infringement, and so our issuance of the covenant not to sue, which we perceived as an affirmation of the mooting by the Supreme Court, but setting that aside, that issuance of that covenant not to sue resolved the controversy between the parties to the extent the Supreme Court decision didn't already do that. I hope that answers your question. Well, I guess what I'm wondering is, do we just dismiss your appeal as to the Section 101 appeal? I see. From our perspective, there are two lines of case law that deal with this issue, one in which the mooting event is not of the party's doing. Right, and this one is of your own doing in my hypothetical. So then what happens? In that hypothetical where we have made it taken— We don't vacate the underlying district court judgment. Then what we would request an alternative is to have it remanded so that we can argue to the district court about whether her decision should be vacated. That's our alternative request. So just to clarify, we would dismiss your 101 appeal because there's no controversy now, given that you've issued the covenant not to sue, but you would want us to remand it back to the district court for the judge there to consider in the first instance whether or not she should vacate her own 101 judgment? Yes, and in addition to the reason that the Supreme Court's claim construction came out, which I think affects and impacts, as we said in our briefing, her 101 determination, it was motivated by the claim construction in the case. In addition to that, her decision was issued before Berkheimer came out, which we, as you can tell from our briefing, believe significantly shifted the appropriate legal analysis to be performed and factual analysis to be performed on the underlying 101 issue. So we think in either case, the case should be sent— At a bare minimum, the case should be sent back to Judge Ilston to determine in the first instance whether her 101 decision is still appropriate in light of the changed claim construction. I don't understand. Why would we remand it back to her? If we simply dismiss this, can't you file some sort of motion with the district court at that point asking her to vacate? There is a Rule 60 motion that we could file, is my understanding. So then why do you need us to remand it? My understanding of the second line of cases that deals with volitional— Because I'll just tell you, I don't think she should vacate her judgment. So why in the world would I send it back and tell her to look at whether to vacate her judgment when you obviously do want her to vacate her judgment, but—and you have at your own disposal another mechanism, Rule 60, to seek that vacateur. Why would our court impose on her to consider something that I don't understand why she should be considering? I see. I understand. And maybe I misunderstood the question. I don't think there needs to be an instruction from this court for her to reconsider. I think we can take it—we can avail ourselves of that mechanism. So we simply rule that the appeal is dismissed and that we will not order— I mean, you asked us to vacate. We're not going to vacate. But why should we—I don't see why we would alternatively order a remand and sort of force her to consider vacating. You have the ability to cause that to happen on your own. I don't know why that's our—a role we should play. And I don't disagree with that, Your Honor. I think it's appropriate for us to exercise that mechanism. I do want to say, however, we're in a bit of a catch-22 here. Obviously, there's a 285 motion that we're confronted with. Had we not given Truven a covenant not to sue, I had concerns that our client would be under the— under the pall of another potential fee motion because the Supreme Court decision from our perspective very clearly applies to this claim—this case as well. Truven, in its own briefing, admits that the interpretation of the claim that was adopted by the Federal Circuit is dispositive of the infringement issue in this case. So from our perspective, the covenant that we issued was just reinforcement. Well, the fact that they admit it, of course they admit it. They don't want to be found to infringe. That doesn't bind us or any other court. And if you didn't agree with that notion, you would be able to assert that patent against them and they can make the arguments and it would be resolved by a court. But why don't you move on? You don't have much time left, and I'd like you to address your attorney's fees argument. Yes, Your Honor. Thank you. No matter what we do with the dismissal, that's just severing one of the cases and the other two deal with the attorney's fees, correct? The 285 issue still is present in either circumstance. Yes, Your Honor. I guess just some really quick points about the 285 motion. I know I'm already in my rebuttal time. Number one, I think it's important to recognize that this is a very, from our perspective, a very rare circumstance that we're dealing with. I've been litigating patent cases for a long time. Okay. Well, I don't care about that. So your personal experience is not evidence that I consider relevant, so keep it to yourself. But why don't we move forward to the only issue I really have, which is the four months between the period of time when you notified them of your intent to withdraw the 981 from the suit and then your actual withdrawal. First off, why didn't you do it in a more timely fashion? I mean, the district court seemed to have said, well, shame on you. Judge Olson seems to have taken the approach that you may have notified them of your intent to do so, but then you didn't do it, and that may well have caused them to have to continue to work on cases. I mean, I have some personal experience, too, and even though you have a tentative settlement orally until it's in writing, you don't stop work in the case because the deadlines are still coming. Sure. Two things. One, they did stop work in the case because they stopped serving discovery related to that patent. From my perspective, there was no dispute that that was not in the case any longer. And so I understood that from page 26 of your brief. And I read the appendices portions for the ESI discovery, and I think I completely agree with you. Are you convinced that 25% of, for example, all discovery that took place during that four months was assessed against your client? That's our understanding. And the real problem here is that by this court's own jurisprudence, we should have the opportunity to review the time records. Not to burden the court with that, but we should have the opportunity to review the time records that were never even produced. So I'm in a position of not being able to. Well, what concerned me was the 17 time entries that were produced, more than half of them had calculation errors in them that all inerred to the benefit of your opponent. And, I mean, sloppiness aside, you know, but you didn't appeal, you didn't raise that argument with the district court, so I don't see why I would address it now for the first time on appeal. The principal issue here, from my perspective, is twofold. One, we should have seen the time records. There are no cases cited that I'm aware of in which time records weren't produced. But they offered to produce them in camera, and why did the district court not do that? Frankly, because I'm sure she's overburdened with work. The role from the Federal Circuit's decisions in this case, the Federal Circuit's decisions in this area, it's the party's role to evaluate those and to police those and to present our opposing view as to what an appropriate fee apportionment would be. We were robbed of that ability because we couldn't ever see the fees. That's number one issue. I don't know. I don't know how sympathetic I am because, actually, the billable rates are incredibly low. I bet the associates at your firm bill as much, if not more, than the partners at their firm do for the same number of hours of work, considerably more. Your Honor, our rates are even lower, actually. Really? Yes, Your Honor. I think my rate's $400-something an hour. Okay. The second issue, other than not having the actual time records, is there are certain aspects of the case that they were allowed to recover fees for, specifically in that four-month period. We gave them a draft covenant. We said we weren't asserting it. The only fight we were having was about the appropriate mechanism. My problem is I am troubled by the fact that they produced an $800,000 number with no detailed articulation of why. And I'll tell you, they get their fees. You're not going to convince me that they're not entitled to fees. The only concern I have is from the time period after which you notified them that you were no longer going to assert the 981. It does appear, at least from the record evidence you've produced, that, for example, none of the discovery pertained to the 981 after that. So why is the 25% rule of thumb still applying to that period of time? That seems to me potentially inconsistent with FOX, so I'm not sure. But then also, let me tell you, the only person who gets rich if I vacate and send this back is you and the other law firm. Why? Because we're talking about a very small number in the scheme of things, 25% of whatever the billables were over that four hours. And how many hours is it going to take the two of you to fight over that at the district court if I send it back for that reason? I feel like only your client loses if I do that. I'm not positive it's what I should do legally. But if I do do it, the only people who lose are the clients, because both sides of you are going to continue to bill your clients to fight over that small four-month window of time, and you're going to want their detailed billable rates, and then you're going to take hours reviewing them and scrutinizing them. I just don't know what good comes from any of that. I agree with you entirely. I think that that four-month period, at a bare minimum, that four-month period should be out very clearly, so we were going to withdraw that. But you didn't withdraw it, and the district court has a point, which means the fact that you told them you were going to withdraw it doesn't prove that they stopped working on it after that. And a lot of law firms wouldn't stop working on it after that. You've proven that for certain entries, like discovery, it appears they didn't work on it in that regard. But we don't know what other entries exist during that four-month period. So you're not going to get me to say no fees after that time. So what am I going to do? I'm going to send it back to the district court to conduct a mini-trial on all the billables that took place, line item by line item, over that four-month period? I feel like that's what FOX wants. Can you just clarify, after you knew it was crystal clear that you had asserted an invalid patent, why did it take four months to withdraw that from the complaint? We were following Ninth Circuit precedent, proposing a mechanism to withdraw it by amending our complaint, which is what the Ninth Circuit says we have to do. Truden refused to accept that approach and argued for a different approach. The thing that we offered at the October beginning date is a more generous offer than what the court ultimately ordered us to enter. And four months later, we were proposing a mechanism based on all the research we had. When you say proposing, you didn't file it. Because we wanted to do it with an agreement with the other side, Your Honor. And that is partially what motivated our decision down the road to issue the covenant on the appeal instantly, because we didn't want to be in a situation where we failed to give the covenant and then be penalized for it, which is what happened in this circumstance. We were genuinely trying to withdraw this patent. So here's my question. Shouldn't they legitimately be able to recoup the attorney's fees that were expended to come to a settlement with you over how the 981 should be extricated? Why isn't that part of them being forced to continue to do work on this 981 patent that was at all times invalid? They clearly stopped doing work on the 981. No, this was work. Negotiating with you over what form your withdrawal will take is work. I agree. So shouldn't they be able to recoup their fees? If I believe they should recoup their fees for any work on the 981, and the district court believes that, that's work on the 981, and that was occurring during that four-month period. So they should be able to recoup that. But not all of the other discovery in the case. And the problem is the case was going like this as far as workload. Discovery was ramping up and everything, and it ramped up during that four-month period when we already said we're not going to assert this patent against you. And they were not conducting discovery and depositions on those issues. The district court excluded most depositions, didn't he or she? No, there are. They don't have any accounting to know how much of the money went into depositions and discovery review, et cetera. All right. Okay. Okay, we are way over time. Is it okay with you if I move on? All right. Let's hear from opposing counsel, and I'll restore two minutes of rebuttal time. On the next case, you get less time because of this. Just kidding. Go ahead. Good morning, Your Honors, and may it please the court. I'm Karen Boyd. I represent the defendant, FLE Truven Health Analytics, and with me at counsel table is my partner. So I don't know where you're planning on starting, but I would just love for you to go right to the last issue, if you don't mind, that I was discussing. Probably you can circle back to whether there should be a vacate or anything like that. I certainly don't want to use up all your time, but could you start with that last four-month period of time? Yes. So in that four-month period of time, and this is exactly why we went with a 25% overall, because it balances ramping down a bit on discovery because it was. Not ramping down. Did you have any discovery during that four-month period of time that pertained to the 981 bet? That pertained particularly to the 981 and exclusively? No. So zero discovery that occurred during that four-month period of time pertained exclusively to the 981. That's all you can get under FOX. You can't get it if it was duplicative of what you had to do for the other patent. So there is this underlying issue when there are two related patents in a case of any time you are doing something that seems to apply equally to both, it might not. So you need to keep your eye on is there anything different between the 726 and the 981. That means that a different outcome comes out of it. So even when you conclude no, they are the same, there is this underlying work of making sure that that is the case and knowing when they're different and when they're the same. So to that extent, had the 981 not come out of the case ultimately and had we gone forward? Is there anything different in discovery you would have done or that you can point to? Any discovery entry anywhere in your billables or anything in your during that four month period that you would not have had to have done if they had actually already withdrawn the 981? Not to my recollection. However, there was substantial work that we needed to do in negotiating and dealing with this issue of the covenant and how do we get rid of this case. Agreed. And he pretty much agreed to that. And so instead of going through an item by item on discovery and teasing all of those out an item by item on the covenant and the negotiations and we wanted to be in a position to be the prevailing party so that we could make an ultimately a fees motion. We did 25% of that and 25% of the discovery. That's where the 25% across these things came from. And that's an example of why 25% is ultimately a fair result. And you know what? That would be entirely appropriate. It seems to me if they or the court had looked at your bills and were able to see that you spent a lot of time, you spent a lot of time on this covenant and stuff and that you didn't, you know, you spent a lot of time on discovery and overall 25% I would have no problem with that. If some underlying analysis had taken place of your bills, but all the court below had was a representation from you that we spent $800,000 litigating this case and we want 25% of it. There's nothing particular to that four month period of time that I can see that would have justified her giving you the 25%. It may well be justified, but I don't see that she had in front of her the kinds of evidence that would satisfy what Judge Kagan seemed to require in Fox. What Judge Ilsen had in front of her was when you look at the case as a whole, which she was tremendously familiar with, she was the judge and she handled discovery motions in this case. There wasn't a magistrate. So the entire case was under her supervision and she knew we had information about how many claim terms were unique to the 981, how many pieces of prior art were unique to the 981. She had that information. She had... And that's all relevant, but not during the four month period. That's not relevant during that four month period. That's what I'm struggling with. Again, she had her personal experience and knowledge of the case and she had the knowledge of each attorney and each of us. I went through my own bills for the entire case. Ms. Vega went through her own bills for the entire case and we took all of this into account and we gave... Well, it's great that you did, but you didn't provide them to the other side, nor did the judge review them. So she's literally just accepting your word for all of that. And her experience with what the issues were that were being dealt with in those four months. But she didn't articulate anything that I can review with regard to that. You're saying that she had some experience of what was occurring during that four month period that maybe informed her decision that 25%, including during that four month period, is still justified, but she didn't articulate any reasons or bases for that in her opinion that I can find. There were not separate reasons for that particular window. Still under the abuse of discretion standard, I believe that she exercised her discretion in a way consistent with the Fox decision. What would happen if... I dread saying this. What would happen if I didn't think that it was supported under Fox? And if I thought that four month window had to go back for some sort of reasoned analysis, because they did tell you that they were no longer going to pursue the 981. And it appears from the discovery at roughly page 5,400 in the appendices, that no more e-discovery, for example, took place on anything related to the 981. And their allegation is a lot of the discovery took place in this four month window. What would happen if I sent it back and told her, do just some sort of meaningful analysis, given that it does appear that you stopped working on the merits of any sort of case regarding the 981. But of course you had to deal with the covenant and negotiate with them, whether an amended complaint or a covenant was sufficient. And that does seem to be time, all of which should be compensated. I'm sure that Judge Ilsen would follow your instructions and would engage in that. There would be briefing from both parties on that issue. And how much money are we even talking about? I mean, I know it's not in the record, okay? But we're talking about a four month period of litigation and the total billables are only $800,000 and 25% of that's only $200,000. How much money are we even talking about if we were to try to focus on that four months? You don't know. That's okay. I'm afraid I don't know. How many months in total? In total it was 21 months of litigation. It was looking at the last four months. My guess based on my memory of the case and my knowledge of how I run cases is that we would probably be looking at total bills for those four months in the $200,000 to $300,000 range. But that is basically a guess. Yeah, I get it. Okay. Would you turn to the issue of whether or not we should grant a motion to vacate? Certainly, Your Honor. So here because of the covenant not to sue, I think there's no question that the appeal is moot and should be dismissed. So if we look at the Supreme Court precedent and precedent from this court on the question of vacating the underlying 101 decision, that's really where there is dispute. I guess it comes down to whether the January 5 cert denial and the other litigation where our court issued a claim construction adverse to CAVE rendered this controversy between you and CAVE moot and extinguished it because there was no longer any viable infringement theory. So yes, they issued a covenant not to sue February 25, a week and a half ago. But nevertheless, two months ago, there was potentially a mooting event with the final resolution of the claim construction debate. And that final decision from the Supreme Court denying certiorari didn't constitutionally moot our dispute. That was a decision that related to a different patent. It related to a different party with a different product. I guess in terms of issue preclusion, though, against the patent owner, against CAVE, it's a different claim, different patent, but it's the same claim limitation, isn't it? It is the same claim limitation or the same claim construction issue is what I will say. And we can tell that it doesn't constitutionally moot and it doesn't actually resolve our dispute. It does make my case a heck of a lot easier to win at the district court level. I will say this claim construction, I believe, applies to the 726 patent asserted against Truven. And I believe that under that construction, Truven doesn't infringe. But no court has held that. And you can tell that it doesn't constitutionally moot the issue because the same claim construction issue exists in the 981 patent, which is asserted against HCSC, who will be arguing in five minutes and 29 seconds. That's a different claim limitation, though, isn't it? It's not identical, like the one we've got here and the one that in that other case where the cert got denied. Right. The claim construction issue is the same. The claim language is different. But the issue that the panel in the OptumInsight case looked at was, does the specification support a claim that covers both direct and indirect standardization? And that panel said, no, this specification doesn't support that. These claims are limited to indirect standardization only. That same specification issue is in the 726 patent and in the 981 patent. Yes, but as I understand it, because that other patent has different claim language, we don't know if a construction of that claim language with other words might actually encompass this other version of standardization. And that is CAVE Consulting's position in the 981 patent. They're conceding for the 726 patent, but they're not conceding for the 981 patent. But the issue is still alive in both of those patents. I don't know if it's an answer to ask us to look at some other litigation to try to figure out whether there was a mooting event in this litigation. I mean, what we have to figure out is it's the same claim language, and the claim language for that other case got an adverse ruling for the patent owner. So why wouldn't that follow here in your case? Well, that issue has not been briefed to any court. It's not been decided by any court. Are the products identical that were at issue in the two litigations? The products are entirely different. So it could be that that claim construction might have some slightly different argument vis-a-vis your product. Maybe they had a DOE argument for your product. They didn't have it, and we don't know. It's not litigated. We don't know any of those issues. Different products. Different products, different companies developed different products. And the patent specifications are different, too. Is that right? Is this a CIP? The 981 is a CIP of the 126. The additional matter in the specification doesn't relate to this claim construction issue. So in relevant ways, the specification in the 126 and the 981 are identical. The 726 for our case, the Truven case, is the grandchild of the 981 patent, and they are continuations. And so those specifications, the 981 specification and the 726 specification are identical, except for the preliminary information about continuations. Do you have anything else you want to cover? I think we're good. Check my notes, but when a judge tells me to sit down, I usually follow that. Thank you, Your Honors. I hope Judge O'Malley is okay. Okay, thank you very much. Well, she's listening to this argument right now, so she heard your words. Thank you. Okay, Mr. Brophy, you've got two minutes for rebuttal. Thank you, Your Honor. I just maybe want to say two very quick things. One, the decision by the Federal Circuit was not a question of whether the specification had support for a particular scope of invention. It was a plain and ordinary meaning interpretation of a specific case. Yeah, but a different specification may cause you not to utilize a plain and ordinary meaning. And sometimes there can be multiple plain meanings for something, and the spec informs which one of them to look to. There are reasons the spec could cause it to come out differently from one. So the Federal Circuit's decision was that this waiting term was limited to specifically indirect standardization, which is not what OptumInsight did in that case. And also, if you look at footnote 6, Truman says we're the same. We don't use that type of standardization. Well, of course they say that because they want you to agree to non-infringement. They're not going to say something contrary to that, but a court has to decide it. It's not the same. From my perspective, number one, there's no dispute because from discovery in the Truman case, we determined that they do use an identical type of waiting to what we lost in Optum. And I was genuinely concerned that if we were to press these kinds of issues, it would be considered an objectively baseless claim because of what we had gone through with Optum. And maybe it would have, but that still doesn't mean that the flip side is you get a pizza pie along with a vacatur. You're right. Maybe had you pursued the claims with your understanding of the lack of strength that they had given the notion of the infringing products, you might well have ended up getting sanctioned or something. Who knows? But that doesn't mean that this court should vacate the lower court's decision on 101 related to the baton. Those two things don't seem entirely linked to me. All I can say is we're talking about an identical specification for purposes of this issue. We're talking about a federal circuit decision construing the exact same claim term, and we're talking about an undisputed, no dispute of fact regarding that the prior defendant's product and the present defendant's product work in exactly the same way with respect to that issue. And so from my perspective, we had nowhere to go but to resolve the case. And I think unless you have any specific questions, I won't spend any more time. That sounds good. Thank you. Let's move on to our next case. I thank both counsel. The case is taken under submission. Our next case is.